Billy HUDGINS, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 482S147.

Supreme Court of Indiana.

Aug. 12, 1983.

Raymond C. Sufana, Gary, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Billy Hudgins, was convicted by a jury of three counts of robbery, all Class B felonies, and was sentenced to 15 years' imprisonment on each count. The sentences are to be served concurrently. On his direct appeal, defendant raises the following five issues:

1. Whether the evidence is sufficient to support the convictions;

2. Whether the trial court erred in admitting the testimony of a witness who had violated a separation of witness order;

3. Whether the trial court erred in admitting into evidence the written statement of one of the victims;

4. Whether the trial court erred in striking a witness's answer from the record *sua sponte;* and

5. Whether comments made by the prosecuting attorney during final argument created reversible error.

A review of the facts most favorable to the state reveals that at 4:30 p.m. on March 4, 1981, defendant approached Allen White at a gas station in Gary, Indiana. Defendant asked White for a ride and White refused. Defendant then entered White's car, pulled a gun, and directed White to drive to a vacant parking lot. Defendant searched White's wallet and took three dollars before White managed to escape from the car. White watched defendant drive away in White's blue 1979 Camaro, which had a license plate number of 94L3329.

At 5:45 p.m. the same day, Yolanda Hernandez was robbed at gunpoint in the parking lot of a shopping center in Gary. The assailant was sitting in a 1978 or 1979 blue Camaro that was parked next to Hernandez's car. Hernandez testified that she gave defendant her purse and watched him drive off in the Camaro. She said the license number was 49L3329. At 9:15 p.m. Mildred Bonilla was parking her car in front of a residence in Gary, when defendant got out of a blue Camaro and approached her. He asked for a light and when Bonilla rolled down the car window,

defendant pointed a gun at her. Bonilla grabbed the gun and struggled with defendant. He shot at Bonilla two times and took her purse. He then fled in the blue Camaro. At trial, Bonilla testified that she thought the license number was 94L3429.

Sometime after 9:00 p.m. Officer Graze saw a blue Camaro with license number 94L3329. The driver refused to pull over and Graze pursued at over ninety miles per hour. The driver, losing control of the car, continued fleeing on foot and fired twice at Graze as he pursued. Graze found defendant, the driver of the car, hiding beneath a stairwell. Graze also found a purse belonging to Bonilla and a gun, which all three victims subsequently identified as being the one used in the robberies. All three victims picked defendant out of a police lineup conducted the evening of March 4, and they all identified defendant at trial.

## I.

Defendant alleges that the evidence is insufficient to support the convictions. He bases this allegation on the following facts: (1) that initially, White misidentified the gun; (2) that the state failed to introduce the leather jacket defendant was said to be wearing during the robberies; (3) that there was a discrepancy between the number of shots that the witnesses testified were fired and the number of rounds that were missing in the gun Graze recovered; (4) that the description by two of the victims was so similar as to make the descriptions unlikely; (5) that defendant was the only person in the police lineup wearing a jacket; and (6) that there was a discrepancy in the color of shirt defendant was said to be wearing.

■ It is well established that, on appeal, this Court will neither reweigh the evidence nor judge the credibility of the witnesses but will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be disturbed. *Garland v. State,* (1983) Ind., 444 N.E.2d 1180;

*Fielden v. State,* (1982) Ind., 437 N.E.2d 986.

■ The alleged discrepancies go to the weight of the evidence and were for the jury to reconcile. The fact that two of the victims gave very similar descriptions supports the convictions rather than undermining them as defendant argues. Defendant also seems to imply that the police lineup was suggestive because defendant was the only one wearing a jacket. However, he has not presented this issue directly, and the record does not support a finding of fundamental error. Therefore, it is waived. *Warriner v. State,* (1982) Ind., 435 N.E.2d 562, 563. Moreover, there was sufficient evidence to support the verdicts without the lineup identifications. Defendant's possession of White's car and Bonilla's purse, plus his attempted flight was substantial evidence of probative value to support the jury's verdicts. Also, the victims made in-court identifications and were cross-examined concerning their prior identifications of defendant. *See id.* There was no reversible error.

## II.

During the trial, the court granted the state's motion for separation of witnesses. After Hernandez had testified, however, it was discovered that Bonilla had been in the courtroom during part of Hernandez's testimony. Defense counsel then objected to Bonilla testifying. The trial court allowed the testimony after defendant agreed there was no connivance by the prosecutor. Defendant now argues that the judge reversibly erred by not inquiring whether Bonilla and Hernandez previously had discussed their testimony together.

■ The decision whether to allow or exclude testimony of a witness once it is disclosed that an order on separation of witnesses has been violated is within the trial court's discretion "in the absence of connivance or collusion by the party calling the witness." *Cox v. State,* (1981) Ind., 419 N.E.2d 737, 739; *O'Conner v. State,* (1980) Ind., 399 N.E.2d 364. There was no conni-

vance or collusion here. Nor has defendant demonstrated how he was prejudiced by the violations or that the trial court abused its discretion. Defendant could have but did not request to question Bonilla about any discussions she may have had with Hernandez. Defendant also had a signed statement that Bonilla had given to police the night of the crime. He could have used this statement to point out any discrepancies in her testimony as a result of overhearing Hernandez's testimony. He did not point out any discrepancies. There was no trial court error.

### III.

■ Defendant also argues that the trial court erred in allowing the state to introduce the entire written statement that White had given to police the night of the robbery. Defendant had used part of the statement in an attempt to impeach White. The state then introduced the entire statement into evidence to rehabilitate the witness. Defendant argues that the correct procedure would have been for the state to question White and elicit testimony from him to rebut the inconsistencies. Defendant has overlooked the general rule in Indiana that allows the introduction of an entire statement after the declarant has been cross-examined on portions of the statement. *Williams v. State,* (1981) Ind., 426 N.E.2d 662, 669; *Johnson v. State,* (1978) 268 Ind. 55, 57; 373 N.E.2d 169, 170. There was no trial court error.

### IV.

During cross-examination of White, defendant asked whether White had made sexual advances toward defendant. White answered "No," and defendant announced that he was finished with cross-examination. The trial judge, after determining that defendant did not intend to submit evidence on the question, had the question and answer struck from the record and instructed the jury to disregard it. Defendant contends that this was error because the court imposed its opinion on the jury by acting *sua sponte.*

■ The course of a trial is within the discretion of the trial judge, *Jaske v. State,* (1978) 269 Ind. 196, 379 N.E.2d 451, as are the scope and extent of cross-examination. *Smith v. State,* (1982) Ind., 439 N.E.2d 634; *Ingram v. State,* (1981) Ind., 426 N.E.2d 18. Along with this discretion is the obligation to preserve the fairness and integrity of the trial by conducting proceedings in an impartial manner. However, action taken *sua sponte* does not automatically constitute advocacy by the court. *United States v. Wright,* (1976 7th Cir.) 542 F.2d 975, 979, cert. denied, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790; *Bruce v. State,* (1978) 268 Ind. 180, 204, 375 N.E.2d 1042, 1056. A court is not required to allow improper procedures regardless of objections.

■ Generally, cross-examination must lie within the scope of direct examination. *Solomon v. State,* (1982) Ind., 439 N.E.2d 570; *Ingram,* 426 N.E.2d at 20. Furthermore, a party may not establish his defense by cross-examining a witness beyond the scope of direct examination unless it is otherwise germane to the issues to be tried. *Solomon,* 439 N.E.2d at 576; *Ringham v. State,* (1974) 261 Ind. 628, 308 N.E.2d 863. In the present case, defendant was attempting to prove his theory that White had initiated the contact with defendant, that a third party had been present, and that White had not been robbed. The judge allowed this line of questioning until defendant suggested that White had made sexual advances toward defendant without having any basis for the question or demonstrating the relevancy of the question. If defendant wished to proceed on the theory that he acted to protect himself from White's advances, the time to present such evidence was during the defense phase of the trial. *See Ingram,* 426 N.E.2d at 20; *Smith v. State,* 439 N.E.2d at 637.

Defendant also alleges that the trial court's action denied him "vital information for continuing vigorous questioning during cross-examination" but does not demonstrate how he was deprived. Nor does he cite authority to support this claim. Defendant has not shown that the trial judge

abused his discretion in striking the question *sua sponte.*

## V.

Defendant's final argument is that the prosecutor's closing remarks shifted the burden of proof to defendant and that the trial court erred in not curing the statements. Defendant objects to three statements made by the prosecutor during closing argument.

■ Defendant's first objection is to the prosecutor's reference to what the defense counsel would argue or say. The trial court agreed with defendant's objection and cautioned the prosecutor to change his method. It was defendant's duty, however, to request an admonishment to the jury if he believed one was necessary. *Williams v. State,* (1981) Ind., 426 N.E.2d 662; *Jackson v. State,* (1980) Ind., 402 N.E.2d 947. *See also Head v. State,* (1982) Ind., 443 N.E.2d 44. Defendant did not request any admonishment and consequently, cannot claim the lack of an admonishment as error on appeal.

At another point in the argument, the prosecutor commented that defense counsel never had explained how defendant got in the car. Defendant objected and the trial judge instructed the prosecutor to rephrase the question, warning him that the judge did not intend to say anything more to the jury. Defendant now contends that the court erred in not admonishing the jury. However, despite defendant's allegations to the contrary, the record does not reveal that any admonishment was requested. This court held in *Williams,* 426 N.E.2d at 667, that if the prosecutor has referred to the defendant's refusal to testify, the jury should be given an admonishment *only if* the defendant has requested one.

■ Furthermore, the record indicates that the prosecutor's comment was in response to defendant's theory that a third person had committed the robberies. Defendant had advanced this theory through cross-examination and in closing argument, although, as the trial court noted, defendant did not present any evidence to support this theory. Thus the prosecutor was attempting to rebut defendant's speculative theory, not to comment on defendant's refusal to testify. *Ross v. State,* (1978) 268 Ind. 471, 376 N.E.2d 1117. In addition, any erroneous inference the jury may have received regarding the defendant's obligation to explain or prove his innocence was cured by the court's final instructions on the presumption of innocence and that the defendant has no obligation to prove anything. Any misstatements of law during closing argument are presumed cured by final instruction. *Jackson,* 402 N.E.2d at 951.

Defendant's final objection on appeal is to the prosecutor's statement that the jury had a duty to convict on behalf of their fellow citizens. As the state correctly points out, defendant did not object to the statement at trial so the issue is waived. *Pavone v. State,* (1980) Ind., 402 N.E.2d 976, 980; *Maldonado v. State,* (1976) 265 Ind. 492, 497–98, 355 N.E.2d 843, 848. Also, when the comment is reviewed in the context in which it was made, it appears that the prosecutor meant that the jury had a duty to carefully assess the evidence, which would lead to the reasonable conclusion to convict defendant.

■ Defendant argues that the prosecutor's comments were repeated instances of misconduct which placed defendant in "grave peril." We find no merit in this argument. The comments were not so inflammatory or prejudicial in their persuasive effect to place defendant in grave peril. *Maldonado,* 265 Ind. at 498, 355 N.E.2d at 848.

For all of the foregoing reasons, there was no reversible error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.