## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2015, 6:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Sheba Sorrells<br>Pendleton, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sheba Sorrells,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 13, 2015<br><br>Court of Appeals Case No.<br>73A01-1411-PC-499<br><br>Appeal from the Shelby Superior Court, No. 1<br><br>The Honorable Jack A. Tandy, Judge<br><br>Case No. 73D01-0812-FB-016 |

**Vaidik, Chief Judge.**

## Case Summary

[1] In 2009 Sheba Sorrells was convicted of Class B felony sexual misconduct with a minor, Class C felony sexual misconduct with a minor, and Class A

misdemeanor contributing to the delinquency of a minor; at a bifurcated proceeding, Sorrells was also found to be a repeat sexual offender. Sorrells filed a notice of appeal but did not thereafter pursue the direct appeal. In June 2011 Sorrells filed a pro se petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel and that the trial court committed fundamental error in denying his motion to continue. Following a hearing at which Sorrells presented witness testimony of several family members, the post-conviction court issued written findings of fact and conclusions of law denying relief. Sorrells, pro se, now appeals.

# Facts and Procedural History[1]

[2] In 2009, following a three-day jury trial, Sheba Sorrells was convicted of Class B felony sexual misconduct with a minor, Class C felony sexual misconduct with a minor, and Class A misdemeanor contributing to the delinquency of a minor. These convictions came about because of acts committed against a teenage victim, R.M.H. At a bifurcated proceeding, Sorrells was also found to be a repeat sexual offender. Following sentencing the trial court advised Sorrells of his appellate rights and then instructed Sorrells' attorney, G. Allen Lidy ("Attorney Lidy"), to preserve his appellate rights. Attorney Lidy filed a

---

[1] Sorrells' trial counsel filed a Notice of Appeal, requesting the Clerk to assemble the trial court's record, the entire transcript of the jury trial, and the transcript of the sentencing hearing. *See* Appellant's App. p. 147. However, Sorrells failed to pursue a direct appeal, and it appears that a transcript was never created. In any event, we do not have before us a factual record of the proceedings below.

Notice of Appeal but Sorrells did not follow through on perfecting a direct appeal from judgment.

[3]     In 2011 Sorrells filed a pro se petition for post-conviction relief arguing that he received ineffective assistance of trial counsel and that the trial court committed fundamental error when it denied his motion to continue based on an allegedly late discovery by the State of a medical report. An evidentiary hearing was held in 2014. At the hearing, Sorrells called four witnesses to testify—his mother, father, grandfather, and daughter, C.H.—in support of his argument that his trial counsel was ineffective for failing to call these witnesses at his trial. The testimony of these witnesses at the post-conviction hearing revealed that Sorrells' mother, brother, and grandfather had not observed and had no first-hand knowledge of the crimes of which Sorrells was convicted. C.H. testified that Attorney Lidy interviewed her before the trial and then decided not to have her testify. On cross-examination at the post-conviction hearing, C.H. admitted that in her statement to the police she had lied about Sorrells taking her and her friend, the teenage victim R.M.H., to a liquor store to buy alcohol because she "was afraid [her] dad was going to get in trouble." P-C Tr. p. 33. C.H. also testified that her father told her and R.M.H., "What happens here stays here." *Id*. at 43.

[4]     Sorrells also submitted into evidence a check for $545.72—which was admitted as Petitioner's Exhibit A—from his trial counsel's law firm, which was deposited into his trust account at Pendleton Correctional Facility after he filed the petition for post-conviction relief. At the time he offered the check into

evidence, Sorrells stated, "I don't know about anyone else here, but when someone is given a refund of money for the job that they've done, I believe it's because, you know, they didn't do an adequate job." *Id.* at 44.

[5] Sorrells presented no evidence at the hearing on the trial court's failure to grant his motion to continue, resulting in—as he argued in his petition for post-conviction relief—"fundamental error and denial of due process of law and fair trial." Appellant's App. p. 163. During closing argument, when the State referenced this claim from Sorrells' petition, Sorrells interjected, "I forgot about that." Tr. p. 49.

[6] Following the hearing, the post-conviction court issued findings of fact and conclusions of law denying Sorrells' petition for post-conviction relief. The court wrote in pertinent part:

> 5) The Petition alleges fundamental error and denial of due process of law and fair trial because the State purposely withheld evidence from him and the trial court denied a requested continuance of his jury trial date. The Petitioner presented no evidence of withheld evidence by the State of Indiana or any evidence or argument related to denial of requested continuance of his trial.
>
> 6) The Petitioner also alleged ineffective assistance of his trial counsel by failing to investigate the facts of the case, interview witnesses, introduce documentary evidence, and present medical expert testimony regarding DNA evidence. Petitioner presented four witnesses at the hearing. Each witness, all family members of Petitioner, testified they were present at the scene of the criminal allegations and had information related to the demeanor and appearance of the victim. They each testified they discussed with [Attorney] Lidy their anticipated testimony. None of the four witnesses were called to testify. Each testified [Attorney] Lidy told

them that their testimony was not necessary or that it would not be in petitioner's best interests for them to testify.

7) Trial counsel Lidy vigorously represented Petitioner during the three day jury trial.

Appellant's App. p. 193-94.

Sorrells now appeals.

# Discussion and Decision

On appeal, Sorrells argues that the post-conviction court erred in finding that he was not denied effective assistance of trial counsel, and he continues to maintain that the trial court committed fundamental error in denying his motion to continue his trial. In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, and the standard of review is rigorous. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); *see also Trujillo v. State*, 962 N.E.2d 110, 113 (Ind. 2011). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010), *reh'g denied*. Here, the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a

showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citation and quotation marks omitted). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998). Accordingly, we accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

[9] First Sorrells alleges that he received ineffective assistance of trial counsel because Attorney Lidy failed to "investigate[] the scene of the crime" and didn't call four "key witnesses." Appellant's Br. p. 5. A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). First, the defendant must show that counsel's performance was deficient. *Id.* (citing *Strickland,* 466 U.S. at 687). This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. *Id.* (internal citation omitted). Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[10] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* (citing *Bieghler v. State*, 690 N.E.2d 188, 199 (Ind. 1997); *Davis v. State*, 598 N.E.2d 1041, 1051 (Ind. 1992); *Ingram v. State*, 508 N.E.2d 805, 808 (Ind. 1987)). The two prongs of the *Strickland* test are separate and independent inquiries. *Id.* Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Williams v. State*, 706 N.E.2d 149, 154 (Ind. 1999) (quoting *Strickland*, 466 U.S. at 697).

[11] At the post-conviction hearing, Sorrells called four witnesses to testify—his mother, father, grandfather, and daughter, C.H.—in support of his argument that his trial counsel was ineffective for failing to call these witnesses at his trial. Sorrells' mother testified that she spoke with the victim, R.M.H., on the telephone "[d]uring the week in question" and R.M.H. "never said a word and she never acted like anything was happening." P-C Tr. p. 8. Sorrells' mother also testified that she asked Attorney Lidy if he wanted her to testify and he said

he didn't need her to. Sorrells' brother testified that he asked Attorney Lidy if he could testify, and Attorney Lidy had asked for an interview, but Sorrells' brother thought perhaps he (the brother) had not "followed through" before the trial. *Id.* at 11. Sorrells' brother went on to testify that he had conversed with R.M.H. around the time of the events for which Sorrells was convicted and R.M.H. "showed no signs of [having been molested]." *Id.* at 15. On cross-examination, the State confirmed that Sorrells' brother's opinion that "it likely didn't happen" was "the entire evidence [he] had in this." *Id.* at 19. On cross-examination, Sorrells' grandfather admitted that he had no personal knowledge of any of the events that led to Sorrells' convictions.

[12] And finally, Sorrells' daughter, C.H., testified that Attorney Lidy had interviewed her before the trial and then decided not to have her testify. On cross-examination at the post-conviction hearing, C.H. admitted that in her statement to the police she had lied about Sorrells taking her and her friend, the teenage victim R.M.H., to a liquor store to buy alcohol because she "was afraid [her] dad was going to get in trouble." P-C Tr. p. 33. C.H. also testified that her father told her and R.M.H., "What happens here stays here." *Id.* at 43. In light of this testimony, it is understandable that Attorney Lidy did not believe that C.H. would be particularly helpful to Sorrells' case.

[13] Given the testimony elicited from all four witnesses at the post-conviction hearing, we cannot say that Sorrells has met his burden of showing a reasonable probability that, but for Attorney Lidy's decision not to have these witnesses testify—insofar as that can be considered counsel's "unprofessional errors"—

the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Timberlake*, 753 N.E.2d at 603. Sorrells has failed to show that counsel's performance fell below an objective standard of reasonableness such that Sorrells was denied effective assistance of trial counsel.

Next Sorrells maintains that the trial court committed fundamental error in denying his motion to continue after the State produced a medical report shortly before the trial. However, the post-conviction procedures do not provide a petitioner with an opportunity to consider freestanding claims that the original trial court committed error. *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001), *reh'g denied*. Such claims are available only on direct appeal. *Id.* (citing *Williams v. State*, 724 N.E.2d 1070, 1076 (Ind. 2000)). Moreover, at the post-conviction hearing, Sorrells presented no evidence whatsoever in support of this contention, and the post-conviction court noted as much in its findings of fact.

We cannot say that Sorrells has shown that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *See Kubsch*, 934 N.E.2d at 1144.

Affirmed.

Kirsch, J., and Bradford, J., concur.