**Hadjin MFTARI, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 64S00–8706–CR–585.

Supreme Court of Indiana.

April 27, 1989.

James V. Tsoutsouris, Public Defender, Porter County by Joanne Tapocsi, Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Hadjin Mftari, was convicted in a jury trial of class D theft, three counts of class C burglary and three counts of class C conspiracy to commit burglary. He received concurrent sentences of fourteen years for each burglary and conspiracy count and four years for theft. The defendant raises the following issues for review: (1) evidence of other crimes; (2) illegal arrest and search; (3) prosecutorial misconduct; and (4) ineffective assistance of counsel.

On the evening of March 30, 1985, several rooms at the Portage Holiday Inn were burglarized while the guests were at the hotel's swimming pool. None of the rooms showed any signs of forced entry. Several of the guests had seen a large, dark-haired man and a smaller, sandy-haired man in the hallways and near the pool. Looking for the two men described by the guests, the manager and a police officer entered the room registered to James Loskie, but failed to locate its occupants.[1] A later investigation revealed that someone had stolen the driver's license of James Loskie, a Texas resident. The Portage police department alerted the national office of Holiday Inn to the burglaries and the bogus registration as James Loskie. On April 11, 1985, the defendant was arrested at a Holiday Inn in Rolling Meadows, Illinois, for possession of burglary tools and an unlawful weapon.

*Evidence of Other Crimes*

At trial the State read the deposition of a guest at the Rolling Meadows Holiday Inn who reported some money missing from her room on April 11, 1985. The defendant was not charged with this burglary, but a Rolling Meadows police officer testified to the events surrounding the defendant's arrest on that day. The defendant asserts that this testimony was improperly admitted because it was irrelevant to the Portage burglaries. The State counters that the testimony shows a "common

1. The manager entered the room to determine whether a third man was occupying the room in violation of the hotel's registration policy. The guests at the pool had seen a third man with the defendant and his large companion.

scheme or plan" that connects the defendant to the charged crimes.

Generally, evidence of uncharged crimes is inadmissible to prove the guilt of the accused. *Pharms v. State* (1985), Ind., 476 N.E.2d 120. However, this Court recognizes a "common scheme or plan" exception which permits proof of identity by showing the defendant committed another crime with identical *modus operandi*. *Staton v. State* (1988), Ind., 524 N.E.2d 6. This exception requires a strong showing that the methods used in the crimes are strikingly similar in a unique manner that indicates a common perpetrator. *Id.* at 8. *See Penley v. State* (1987), Ind, 506 N.E.2d 806, 810. As in *Staton,* the defendant placed his identity in issue by presenting witnesses who supported his alibi defense. 524 N.E.2d at 8.

The uncharged Rolling Meadows burglary shared with the Portage burglaries the following circumstances: the crime occurred at a Holiday Inn, the crime occurred in the evening while the guest was at the hotel's swimming pool, the defendant and his companion matched the description of two men who were seen at the hotel, and two men had falsely registered under the name of James Loskie. In each burglary, the perpetrators left no signs of forced entry, left the room undisturbed, and removed only money and jewelry, both of which are easily concealed.

With reasonable certainty, the similarities establish a method of burglary in which the perpetrators waited until the guests at a Holiday Inn were at the pool before they entered the guests' rooms and removed easily concealed valuables without leaving any obvious trace of entry and theft. Moreover, the act of registering as James Loskie strongly tends to show a common perpetrator. The registration provides, literally and figuratively, the defendant's "signature" to the crime.

When taken with the officer's testimony placing the defendant at the Rolling Meadows Holiday Inn, the testimony of the guest tends to prove by "common scheme or plan" the defendant's identity as the

Portage burglar. The trial court did not err in admitting the evidence.

### Illegal Arrest and Search

The defendant asserts that evidence involving his arrest in Rolling Meadows, Illinois, should have been excluded because the arrest was illegal. He seeks to exclude the testimony of the officers as well as the driver's license, burglary tools, Holiday Inn directory, and other items found in a search of the defendant and his automobile.

On April 10, 1985, the Rolling Meadows Holiday Inn contacted the Portage police and informed them that a James Loskie had checked in. Early the next morning, the Portage police officers went to the Illinois hotel and discovered that the two men in Loskie's room matched the description of the Portage Holiday Inn suspects. Having set up surveillance of the suspects' room, the Portage officers contacted the Rolling Meadows police and requested that a detective unit be sent to the hotel. Approximately 7:00 a.m., the defendant's companion left the room and was confronted by one of the Portage officers who asked for the suspect's name. The other officer entered through the open door of the hotel room and asked the defendant his name. The defendant claimed to be James Loskie. Within a few minutes, the Rolling Meadows police officers arrived and asked the suspects for identification; the defendant again claimed to be James Loskie. The Rolling Meadows officers arrested the defendant's companion on two outstanding warrants. When the defendant opened his briefcase to find his identification, a Rolling Meadows officer saw several lock picks and a pair of metal knuckles in the briefcase. The officer then arrested the defendant for possession of burglary tools and unlawful possession of a weapon. Having arrested the suspects, the officers searched the suspects' automobile and discovered other evidence linking the defendant to the Portage burglaries.

At trial the defense counsel objected to the introduction of physical evidence obtained from the Illinois arrest on the ground that the arrest lacked probable

cause. On appeal, the defendant seeks to exclude the physical and testimonial evidence relating to the arrest and search. In doing so, he attacks each aspect of the Illinois episode.

The defendant's basis for objection, the lack of probable cause for arrest, confines our review. "Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal." *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. *Accord Fozzard v. State* (1988), Ind., 518 N.E.2d 789. The additional grounds asserted by the defendant do not rise to the level of fundamental error and, therefore, are not reviewable. *See Fair v. State* (1977), 266 Ind. 380, 364 N.E.2d 1007 (admission of evidence from alleged illegal arrest did not amount to fundamental error). We consider only whether the Illinois police officer had probable cause to arrest the defendant.

Probable cause for a warrantless arrest exists where the arresting officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe that the suspect has committed the crime in question. *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; *Merritt v. State* (1986), Ind., 488 N.E.2d 340. *Accord People v. Fletcher* (1978), 66 Ill.App.3d 502, 23 Ill.Dec. 258, 383 N.E.2d 1285. In the present case, the Illinois police officer saw several lock picks and a pair of metal knuckles in the defendant's open briefcase. Under Illinois law, possession of either type of these articles is a felony. Ill.Ann.Stat. ch. 38 sec. 19–2 (Smith–Hurd 1977) (possession of burglary tools); Ill.Ann.Stat. ch. 38 para. 24–1(a)(1) (Smith–Hurd 1988 supp.) (unlawful use of weapon). The officer had probable cause to arrest the defendant for possession of these items. The trial court did not err in admitting the physical and testimonial evidence about the defendant's arrest in Illinois.

### Prosecutorial Misconduct

██ Alleging ten improper comments in the prosecutor's final argument and three "evidentiary harpoons," the defendant asserts that he was placed in "grave peril" which denied him a fair trial. *See Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843. However, a timely objection at trial is necessary to secure for review the issue of prosecutorial misconduct. *Id.* at 498, 355 N.E.2d at 848. *Accord Kindred v. State* (1988), Ind., 524 N.E.2d 279. Because the defendant failed to object at trial to the alleged misconduct, the issue is waived.

### Ineffective Assistance of Counsel

The defendant claims that the ineffectiveness of his trial counsel denied him a fair trial. We will address the many instances of alleged incompetence to determine whether they amount, individually or collectively, to ineffective assistance of counsel.

██ Reversal for ineffective assistance of counsel is appropriate in cases where a defendant shows both (a) that counsel's performance fell below an objective standard of reasonableness, and (b) that the deficient performance so prejudiced defendant as to deprive him of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. A claim of ineffective assistance must identify the claimed errors of counsel, so that the court may determine whether, in light of all circumstances, the counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, defendant must further show a reasonable probability that it altered the outcome of the case. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Chupp*

v. State (1987), Ind., 509 N.E.2d 835; Burr
v. State (1986), Ind., 492 N.E.2d 306; Jack-
son v. State (1985), Ind., 483 N.E.2d 1374;
Price v. State (1985), Ind., 482 N.E.2d 719;
Seaton v. State (1985), Ind., 478 N.E.2d 51.

■ The defendant finds fault in his
counsel's failure to file his notice of alibi
defense within the statutory deadline of
Ind.Code § 35–36–4–1. Although his coun-
sel missed the deadline, the trial court ac-
cepted the notice and allowed the defen-
dant to present his alibi witnesses. De-
fense counsel's late filing did not harm the
defendant in any way.

■ The defendant claims that a motion
in limine made by his counsel evidences
incompetence because it was off the record.
We will not find fault based on mere specu-
lation as to whether the purpose of the
motion warranted it being placed in the
record. See Turner v. State (1987), Ind.,
508 N.E.2d 541.

Similarly, we cannot find fault with de-
fense counsel's failure to object to the
State's motion to separate witnesses be-
cause the record does not reflect whether
the motion was actually made and how the
court ruled on it, if at all. Id.

Regarding his arrest in Illinois, the de-
fendant presents two examples of alleged
incompetence. First, defense counsel
failed to make a pre-trial motion to sup-
press the evidence relating to the Illinois
arrest and search. Then at trial, defense
counsel only objected to the officers' testi-
mony as irrelevant and to the physical evi-
dence as the product of an illegal arrest.

■ "[E]vidence resulting from a
search or seizure may be challenged either
before trial in a motion to suppress or at
trial by timely objection or motion to
strike." Martin v. State (1978), 176 Ind.
App. 99, 101, 374 N.E.2d 543, 545 (emphasis
added). Defense counsel's decision to ob-
ject at trial was not unreasonable. Addi-
tionally, the defendant must show that had
his counsel objected on different grounds,
the trial court would have to sustain the

objections. Oglesby v. State (1987), Ind.,
515 N.E.2d 1082. The defendant has made
no such showing.

The defendant also claims that the lack
of evidence for the conspiracy instruction
indicates ineffective counsel. As the State
presented circumstantial evidence indicat-
ing a conspiracy to burglarize hotel rooms,
defense counsel cannot be faulted. See
Isom v. State (1986), Ind., 501 N.E.2d 1074
(conspiracy may rest upon circumstantial
evidence). Likewise, we do not agree with
the defendant's claim that the alleged in-
sufficiency of evidence of the burglaries
indicates any fault on defense counsel's
part.

■ The defendant next finds fault
with defense counsel's failure to raise in
the motion to correct errors the sufficiency
of evidence for the theft conviction. How-
ever, sufficiency of evidence may be raised
for the first time on appeal. Collins v.
State (1977), 266 Ind. 430, 364 N.E.2d 750;
Trial Rule 50(A)(5). Defense counsel's
omission was not unreasonable and result-
ed in no harm.

■ The defendant lists seven instances
of alleged highly prejudicial testimony, but
he fails to show how any of them are
improper and prejudicial. This Court will
not consider a defendant's contentions that
are unsupported by authority. Hunt v.
State (1983), Ind., 455 N.E.2d 307.[2]

The defendant also claims that his trial
counsel failed to object to the in-trial voice
identification by a witness for the State.
The defendant presents no authority that
shows any grounds for objecting to this
identification. See Harris v. State (1978),
268 Ind. 12, 373 N.E.2d 149.

■ The defendant finds fault in his
counsel's motion for a directed verdict af-
ter counsel had called three witnesses.
The defendant correctly states that a de-
fendant waives the right to attack the deni-
al of a motion for directed verdict when he
proceeds to present evidence. Harrison v.

2. The defendant does not provide any support-
ing authority on this sub-issue. He cites Graves
v. State (1985), Ind.App., 482 N.E.2d 1169,

which this Court vacated in Graves v. State
(1986), Ind., 496 N.E.2d 383.

*State* (1984), Ind.App., 469 N.E.2d 22. In the present case, the trial court *did* consider the motion on its merits before denying it. No harm resulted because the trial court certainly would have denied the motion had defense counsel made the motion before presenting any evidence.

The next instances of alleged incompetence involve the sentencing hearing. First, defense counsel asked the trial judge to banish the defendant to Yugoslavia in lieu of imprisonment. Second, defense counsel did not correct the trial judge when the judge referred to the defendant's "six burglaries" instead of three burglary and three conspiracy convictions.

The defendant, who is not a U.S. citizen, was not harmed by his counsel's request for banishment in lieu of imprisonment. The sentencing hearing transcript indicates that the defendant may have authorized the request. After serving his sentences, the defendant faces deportation, making banishment without jail time very attractive to him. We view the judge's reference to "six burglaries" as insubstantial.

The defendant has failed to show that his counsel's performance was deficient and harmful.

### Multiple Conspiracy Convictions

We note, however, that two of the conspiracy convictions must be reversed for plain error. "A single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute." *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1386. A determination of whether more than one agreement existed rests upon consideration of the following factors: nature of the criminal scheme; common participants; proximity in time; and the conspirator's involvement in each crime. *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410, 414. In the present case, the burglaries were committed by the defendant and his companion within an hour or so at the same hotel. The evidence does not allow a reasonable inference that the defendant entered into three separate agreements with his companion to commit three burglaries.

This cause is remanded to vacate two of the conspiracy convictions. The trial court is otherwise affirmed.

SHEPARD, C.J., and GIVAN and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.